**Caitlin M. GREY, Appellant,**

v.

**State of NEW JERSEY; Scott Dennis; John or Jane Does 1–10\* \*(Amended per Clerk's Order dated 1/31/03).**

**No. 02–4553.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Nov. 21, 2003.

Decided Dec. 8, 2003.

---

1. Leeds & Morelli is now known as Leeds, Morelli & Brown.

Michael S. Kimm, Kimm, Grant & Weinhaus, Hackensack, NJ, for Appellant.

Barbara J. Stoop, Richard J. Hughes, Justice Complex, Diane M. Lamb, Sarah T. Darrow, Trenton, NJ, Ilene I. Schafer, Rosen, Schafer & Dimeo, Philadelphia, PA, for Appellee.

Before RENDELL, BARRY, and MAGILL,* Circuit Judges.

* The Honorable Frank J. Magill, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

## OPINION

BARRY, Circuit Judge.

There is an old Mexican curse: May you have a lawsuit in which you are sure that you are right. Appellee Scott Dennis can certainly attest to the unfortunate truth of this malediction. In 1996, he prevailed in the arbitration of a fee dispute with his attorney. More than seven years later, he is still attempting to collect his money.

Caitlin M. Grey, Dennis's former attorney, has managed to postpone, by virtue of protracted litigation, the reimbursement of money she owes her client. In the latest phase of her efforts to undermine Dennis's claim, Grey has collaterally attacked the New Jersey State Court fee decision in federal court, raising jurisdictional and constitutional issues. She now appeals the Order of the United States District Court for the District of New Jersey dismissing her complaint pursuant to the *Rooker-Feldman* doctrine. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review is plenary, *Parkview Associates Partnership v. City of Lebanon,* 225 F.3d 321, 323–24 (3d Cir.2000), and we will affirm.

### I. Background

In the early 1990s, Mr. Dennis, a Pennsylvania resident, hired Ms. Grey, an attorney licensed to practice in New Jersey and Pennsylvania, to handle a number of legal matters in Pennsylvania. For reasons not entirely clear from the record, Dennis's claims were dismissed for lack of prosecution. Understandably, he was displeased, and requested reimbursement from Grey for the fees she had collected from him. In January of 1996, Grey sent a notice to Dennis, advising him that he could have their fee dispute arbitrated through a procedure established under the New Jersey Court Rules. N.J. Court Rule 1:20A–3(b) *et seq.*

In February of 1996, Dennis filed an Attorney Fee Arbitration Request Form with the New Jersey Arbitration Committee ("Committee") in accordance with New Jersey Court Rules. On February 26, the Committee requested that Grey file an answer within 20 days. She failed to do so; on March 31st, however, she filed a response that was not only late, but which the Committee, on April 4, rejected as incomplete. The Committee again requested information from her to facilitate assessment of Dennis's claim, and warned her that if she failed to comply, she would be precluded from participating in the arbitration. *See* N.J. Court Rule 1:20A–3(b)(2) (allowing Committee to preclude participation in arbitration).

Grey was again found non-compliant by the Committee, which, as promised, barred her from further participation in the arbitration. The Committee proceeded, and on June 18, 1996, determined that she should return $10,865.15 of the $13,724.28 in fees that she had collected from Dennis. Grey appealed the Committee's decision to the New Jersey Disciplinary Review Board. Her appeal was unsuccessful.

Dennis filed suit in New Jersey Superior Court seeking entry of a judgment against Grey for $10,865.15; he has been attempting to collect his money ever since. Grey has used a variety of litigation tactics to stall and evade the determination of the Committee. In the Superior Court, Grey urged the Court to re-examine the merits of the Committee's fee determination. The Court concluded that it lacked jurisdiction to do so. She took an interlocutory appeal, and on October 4, 1999, the Appellate Division agreed with the Superior Court that the determination of the Disciplinary Review Board was not subject to review. Grey next filed a petition seeking certification of her appeal to the Supreme Court of New Jersey; it was denied on February 15, 2001.

Having exhausted her litigation options in the state courts of New Jersey, on March 30, 2001, approximately five years after the initiation of the fee dispute, Grey filed suit in the U.S. District Court for the Eastern District of Pennsylvania. She alleged for the first time that the Committee lacked jurisdiction to arbitrate a fee dispute between a Pennsylvania lawyer and a Pennsylvania client. She named the State of New Jersey, in addition to Dennis, as a defendant and asserted that New Jersey's exercise of jurisdiction violated the Fourteenth Amendment and 42 U.S.C. § 1983. She also asserted for the first time that the Committee's sanction precluding her participation in the arbitration violated federal constitutional guarantees of Due Process. The case was transferred to the U.S. District Court for the District of New Jersey, which, relying on the *Rooker–Feldman* doctrine, dismissed the case for lack of subject matter jurisdiction.

## II. Discussion

■ The propriety of the New Jersey Courts' jurisdictional determination is beyond review in this Court. Importantly, before arriving here, this case was considered by the New Jersey Arbitration Committee, the New Jersey Disciplinary Review Board, the New Jersey Superior Court, the New Jersey Appellate Division, and the Supreme Court of New Jersey.

The *Rooker–Feldman* doctrine prohibits us from reviewing the final determinations of a state court, even those that are erroneous. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206, (1983) (holding that a lower federal court "has no authority to review final judgments of a state court in judicial proceedings"); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923) ("no court of the United States other than this Court could entertain a proceeding to reverse or modify the judgment for errors").

We recognize that the issue of subject matter jurisdiction does not appear to have been litigated in the State Court proceedings. This, however, is of no avail to Grey. "Every court in rendering a judgment tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter." *Stoll v. Gottlieb,* 305 U.S. 165, 171–72, 59 S.Ct. 134, 83 L.Ed. 104 (1938). And, there can "be no doubt that if the question ... had actually been raised and decided ... that determination would have been final save as it was open to direct review on appeal." *Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 377–78, 60 S.Ct. 317, 84 L.Ed. 329 (1940).

Of course, as we have often recognized, "it is fundamental that a court may consider jurisdiction on its own. The issue of jurisdiction is always open for determination by the court." *In re Orthopedic "Bone Screw" Prods. Liab. Litig.,* 132 F.3d 152, 156 (3d Cir.1997) (citing *Underwood v. Maloney,* 256 F.2d 334 (3d Cir.1958)). Further, "[i]f a court then determines that it lacks subject matter jurisdiction, it cannot decide the case on the merits. It has no authority to do so." *Id.* In this case, however, the only relevant jurisdictional question before us is not whether the New Jersey Courts properly had jurisdiction, but whether we may review the New Jersey State Courts' assertion of jurisdiction. The law is clear: under *Rooker–Feldman,* we may not.

Even were *Rooker–Feldman* not a bar to Grey's case, res judicata—or claim preclusion—would be. Grey had a full and fair opportunity to contest the jurisdiction of the New Jersey Courts, but chose not to do so. Indeed, she chose the New Jersey forum, and did not dispute jurisdiction until she had lost on the merits at every level of the New Jersey court system. As the Supreme Court of the United States has explained, jurisdictional determinations

are not exempted from the precepts of res judicata:

> A party that has had an *opportunity* to litigate the question of subject-matter jurisdiction may not ... reopen that question in a collateral attack upon an adverse judgment. It has long been the rule that principles of res judicata apply to jurisdictional determinations-both subject matter and personal.

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 n. 9, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) (emphasis added).

■ Similarly, Grey's constitutional claims are barred by *Rooker–Feldman* and by res judicata. With regard to *Rooker–Feldman,* we have held that lower federal courts cannot consider federal questions that are intertwined with state questions where doing so would disturb a state court's determination. *Parkview Associates,* 225 F.3d at 327. Here, Grey asks us to conclude that the decision to bar her from the arbitration proceedings violated the Constitution. But she has already appealed the Committee's actions all the way to the Supreme Court of New Jersey. That she neglected to couch her claims in constitutional garb before the various State courts does not preserve those claims for our review.

■ With regard to res judicata, the Supreme Court of United States has long recognized "the competence of state courts to adjudicate federal constitutional claims." *Feldman,* 460 U.S. at 483. Accordingly, Grey should have pressed her constitutional claims in State court. Because those claims were available, even if not asserted, she

> must abide by the rule that a judgment upon the merits in one suit is res judicata in another where the parties and subject matter are the same, not only as respects matters actually presented to sustain or defeat the right asserted, but

also as respects any other available matter which might have been presented to that end.

*Grubb v. Public Util. Comm'n,* 281 U.S. 470, 479, 50 S.Ct. 374, 74 L.Ed. 972 (1930) (citations omitted). Grey "was not at liberty to prosecute [her claim] by piecemeal, as by presenting a part only of the available grounds and reserving others for another suit, if failing in that." *Id.*

### III. Conclusion

We, as witnesses to the many good works and admirable practices of the vast majority of lawyers who appear before us, nonetheless from time to time encounter an attorney whose practices at best leave much to be desired, and at worst, are worthy of the ire which society is quick to heap upon members of our profession. It is unclear from the record what has prompted Grey's pursuit of this litigation. What *is* clear is that it should end here. The Order of the District Court will be affirmed.