# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3812

_____

Bruce G. Schwartz

*Plaintiff - Appellant*

v.

Ardis Bogen, formerly known as Ardis Schwartz

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 14, 2018
Filed: January 16, 2019

_____

Before COLLOTON, SHEPHERD, and STRAS, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Bruce Schwartz filed an action against Ardis Bogen, his ex-wife, alleging violations of the anti-alienation provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., that arose from payments he made to her for almost three decades. Bogen moved for dismissal on the ground of

res judicata, and the district court[1] dismissed the matter with prejudice. On appeal, Schwartz argues the district court erred in granting Bogen's motion. Having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I.

Schwartz and Bogen entered into a marital property settlement agreement (Agreement) in New Jersey. The Agreement was incorporated into their final judgment of divorce (Judgment), which was entered in 1983, and provided, in relevant part, that if Bogen remarried after January 1, 1986, but in or before 1990, Schwartz would pay Bogen, "as equitable distribution, a yearly sum equal to Twenty (20%) percent of [Schwartz]'s Basic Bell System Management Pension Plan . . . ." Schwartz retired in 1985, and Bogen remarried in 1989. Neither Schwartz nor Bogen made a request for a qualified domestic relations order (QDRO) at either time. From 1989 through 2016, Schwartz made payments to Bogen using personal checks. Bogen never received distribution or payment from the pension plan itself. Both reported the payments as alimony on their federal tax returns.

In 2016, Schwartz contacted Bogen and told her he realized that, under the terms of the Agreement, he should have stopped making the alimony payments in 1995 because she had remarried. Bogen, through her attorney, responded that the payments were not alimony but rather were an equitable distribution of the pension plan. According to Schwartz's complaint, Bogen's attorney stated in a letter that because the Judgment was entered before the effective date of the Retirement Equity Act of 1984 (REA), Pub. L. No. 98-397, 98 Stat. 1426 (1984), "the division of the pension was done without a QDRO."

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

-2-

Bogen commenced an action for enforcement of her rights in New Jersey state court, requesting, among other things, that Schwartz be compelled to pay her 20% of his pension plan in monthly installments. Schwartz argued that the relief Bogen sought was "contrary to Federal law." Specifically, he argued that the anti-alienation provisions of ERISA prohibited sharing his pension and entitled him to a refund of money already paid to Bogen. He also argued that there was no QDRO to divide his pension and, without a QDRO, the pension plan could not be divided. He did not argue that the state court was without subject-matter jurisdiction to entertain the alleged ERISA violations.

The state court made several rulings. First, it found that the doctrine of laches barred Schwartz's request for a refund of the money paid to Bogen since 1995. "Notwithstanding" this ruling, the state court then explained that "the issue of whether these payments were alimony or intended as equitable distribution and the arguments [Schwartz] asserts regarding ERISA must be addressed, as [he] may have an ongoing obligation to pay [Bogen]." The court further found that the payments were an equitable distribution, not alimony. The court also found that while ERISA prohibits the assignment or alienation of pension-plan benefits, it "was not intended to prevent the assignment to a spouse or former spouse that is entitled to support," citing New Jersey case law. Schwartz did not appeal the state court's judgment.

Instead, Schwartz filed a complaint against Bogen in United States District Court for the District of Minnesota, asserting two counts: recovery of payments in violation of ERISA and the REA, and a declaration of federal preemption under the aforementioned federal laws. Bogen moved, in relevant part, for dismissal on the ground of res judicata. The district court granted Bogen's motion. It concluded that res judicata applied because, among other things, the state court determined Bogen was entitled to a portion of Schwartz's pension, notwithstanding ERISA. The district court rejected Schwartz's argument that res judicata did not apply because the state court was without jurisdiction to determine whether Bogen was entitled to a portion

-3-

of his pension. It concluded that state and federal courts have concurrent jurisdiction to determine whether a divorce decree, judgment, or order qualifies as a QDRO. Whether the state court "correctly determined that the prior order was an enforceable QDRO," the district court explained, is irrelevant to the application of res judicata. Accordingly, the district court dismissed the matter with prejudice. This appeal followed.

## II.

For the first time at oral argument, the parties addressed whether the Rooker-Feldman doctrine, not res judicata, more appropriately applied to this case. Under the doctrine, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." Lance v. Dennis, 546 U.S. 459, 463 (2006) (per curiam). Because the doctrine "is jurisdictional, it may be addressed for the first time on appeal and may be raised sua sponte." Lemonds v. St. Louis Cnty., 222 F.3d 488, 492 (8th Cir. 2000), abrogated on other grounds by Shelby Cnty. Health Care Corp. v. S. Farm Bureau Cas. Ins. Co., 855 F.3d 836, 840-41 (8th Cir.), cert. denied sub nom. Ford v. Shelby Cnty. Health Care Corp., 138 S. Ct. 473 (2017). However, we need not address the application of the Rooker-Feldman doctrine in this case because it is "permissible to bypass Rooker–Feldman to reach a preclusion question that disposes of a case." In re Athens/Alpha Gas Corp., 715 F.3d 230, 235 (8th Cir. 2013). Accordingly, we only address the application of res judicata in this appeal.

## A.

Schwartz argues the district court erred in granting Bogen's motion to dismiss on the basis of res judicata. "We review *de novo* the district court's grant of a motion to dismiss for failure to state a claim based on *res judicata* . . . [and] accept the plaintiff's factual allegations as true." Laase v. Cnty. of Isanti, 638 F.3d 853, 856 (8th

Cir. 2011) (internal quotation marks and citations omitted). In determining whether res judicata applies, "[t]he law of the forum that rendered the first judgment controls the res judicata analysis." Id. (internal citations and quotation marks omitted). Accordingly, as the district court correctly found, New Jersey law governs the res judicata analysis in this case.

B.

Under New Jersey law, "[t]he term '*res judicata*' refers broadly to the common-law doctrine barring relitigation of claims or issues that have already been adjudicated." Velasquez v. Franz, 589 A.2d 143, 147 (N.J. 1991). "In essence, the doctrine of *res judicata* provides that a cause of action between parties that has been finally determined on the merits by a tribunal having jurisdiction cannot be relitigated by those parties or their privies in a new proceeding." Id. (citing Roberts v. Goldner, 397 A.2d 1090, 1091 (N.J. 1979)). Res judicata "applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined," but were not. Watkins v. Resorts Int'l Hotel & Casino, Inc., 591 A.2d 592, 599 (N.J. 1991) (citing Culver v. Ins. Co. of N. Am., 559 A.2d 400, 406 (N.J. 1989)).

Schwartz argues res judicata does not apply because the state court was without jurisdiction to address violations of ERISA and the REA because Congress has given exclusive jurisdiction to the federal district courts to address such violations. In other words, the state court could not and did not rule on the violations. Moreover, Schwartz argues res judicata does not apply because "the ERISA violations claims did not arise prior to and were not litigated in New Jersey. To the contrary, it was the New Jersey Order that ripened the ERISA violations claims." Appellant's Br. 34, 38-39. We disagree.

First, Schwartz concedes he did not raise his lack-of-jurisdiction argument before the state court, and he does *not* claim that he was prevented from asserting this argument in the earlier proceeding. He also concedes that he did not appeal the state court's judgment, though he could have. Additionally, he does *not* dispute that the state court's judgment was final and on the merits. "[T]he principles of *[r]es judicata* apply to all types of issues including issues of jurisdiction over the subject matter as well as the person." State v. Am. Can Co., 198 A.2d 753, 757 (N.J. 1964) (citing Treinies v. Sunshine Mining Co., 308 U.S. 66, 78 (1939)). "A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment." Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 n.9 (1982); see also Grey v. New Jersey, 91 F. App'x 747, 750-51 (3d Cir. 2003) (explaining that res judicata barred litigant from contesting New Jersey state court's subject-matter jurisdiction for the first time in federal court because she had a "full and fair opportunity" to do so in state court, "but chose not to do so"). And here, the New Jersey state court unquestionably had jurisdiction to hear Bogen's attempt to enforce the Agreement. There are "res judicata consequences" to a "final, unappealed judgment on the merits . . . ." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981); cf. Geiger v. Foley Hoag LLP Ret. Plan, 521 F.3d 60, 68 (1st Cir. 2008) ("In the final analysis, Geiger rejected the opportunity to challenge the QDROs at both the state trial and appellate levels. That he did so on the mistaken belief that the federal courts had exclusive jurisdiction over those challenges does not alter the finality of those judgments, nor their preclusive effect.").

Second, a cursory glance at the state court's judgment demonstrates that Schwartz fully participated in the state court proceeding; indeed, he raised the alleged ERISA violations before the state court, the same court he now claims was without jurisdiction to address the violations. In state court, he argued that the relief Bogen sought was "contrary to Federal law." Specifically, Schwartz argued that ERISA "clearly prohibits any such intent to assign or alienate the benefits provided under his

pension plan"; that "both ERISA and the Internal Revenue Code . . . did not allow the benefits provided under the plan to be assigned or alienated and there could not legally be a division of his pension plan"; and that "the pension plan itself also prevented the assignment or alienation of the benefits provide [sic] to him."  Schwartz also argued that, under ERISA and the REA, his "pension plan could not be divided without a QDRO" and that "there was no QDRO in place dividing the pension plan."  Schwartz's arguments before the state court, as evidenced by the state court's judgment, are prima facie evidence that the ERISA violations "ripened" well before the entry of the state court's judgment, contrary to Schwartz's position.  See Grey, 91 F. App'x at 750-51 (explaining that res judicata barred litigant from contesting New Jersey state court's subject-matter jurisdiction for the first time in federal court because she "did not dispute jurisdiction until she had lost on the merits at every level of the New Jersey court system").  He is precluded from getting a second bite of the apple in federal court.

Schwartz also argues that "[b]ecause Bogen was not a participant or beneficiary under the Plan, she could not properly bring 29 U.S.C. § 1132(a)(3) claims in New Jersey."  Appellant's Br. 32.  But she never did.  Rather, she sought to enforce her rights and Schwartz's obligations under the terms of the Agreement.  Nothing in the state court's judgment suggests it treated Bogen's motion as a civil-enforcement action pursuant to 29 U.S.C. §§ 1132(a)(1)(B) or 1132(a)(3).  In fact, if Schwartz believed Bogen was actually bringing a civil-enforcement action under § 1132(a), he could have sought removal to federal court, arguing that Bogen's motion was both completely preempted by ERISA *and* "displaced by [ERISA's] civil enforcement provisions . . . ."  Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987).  However, Schwartz neither sought removal after Bogen filed in state court nor appealed the state court's judgment.  Nor did Schwartz expressly raise his preemption claim in state court even though state courts are asked to determine, with regularity, "whether a state law cause of action falls to ERISA's preemption provision . . . ."  Mack v. Kuckenmeister, 619 F.3d 1010, 1019 (9th Cir. 2010).

-7-

Accordingly, based on our reading of New Jersey law, the district court did not err in dismissing the matter on the basis of res judicata.

## III.

The judgment is affirmed.

_____