## WILLIAM L. McWILLIAMS v. GEORGE W. KING AND GEORGE T. PHILLIPS.

1. Questions of pleading—Where, in an action of trespass, *quare clausum fregit*, a replication sets up the service of a *supersedeas* upon the constable who, in his plea, justifies the expulsion of the plaintiff from the *locus in quo*, by virtue of a justice's warrant, it is necessary for such replication to show, by direct averment, that a *certiorari* was issued in support of the *supersedeas*.
2. The office of a *supersedeas* considered.
3. A special traverse should conclude with a verification.
4. The use of a special traverse in this case sustained.
5. The trial and verdict taken by virtue of the supplement to the landlord and tenant's act, are conclusive so far as to be justifications to the justice and the constable, but are not conclusive, either upon landlord or tenant, in any subsequent legal proceeding.

---

In trespass. On demurrer to replication, and joinder in demurrer.

The pleadings in this case are of considerable length, and involve several issues of law and fact. The only parts necessary to a proper understanding of the points brought up by the demurrers, are concisely and clearly set forth in the opinion of the court.

The cause was argued before the CHIEF JUSTICE, and Justices ELMER, VREDENBURGH, and BEDLE.

For the plaintiff, *J. Vanatta*.

For defendants, *J. G. Shipman*.

The opinion of the court was delivered by

THE CHIEF JUSTICE. Several of the replications in this case have been demurred to, and thus the points of inquiry are presented.

The action is in trespass, *quare clausum fregit*, the declaration being in the common form. The fifth plea is by Phillips alone, who is one of the defendants, and sets up that he was a constable, and that a writ of possession came to his hands from a justice of the peace, by virtue of the supplement to the act relating to landlords and tenants, commanding him to remove the plaintiff from the premises in question, and that this entry under this precept is the trespass complained of. The sixth and seventh pleas are pleaded by King, the other defendant, separately, and he alleges that he was the owner of the *locus in quo*, and that the plaintiff was his tenant, and that his term being ended, he proceeded in conformity to the statute just referred to, and removed him by virtue of the warrant of the justice. These pleas advance substantially the same defence. To these there are two several replications; the first applying to the fifth plea, and the other to the sixth and seventh. And these are similar, both in form and matter, the essential averments being that, before the execution of the writ of possession, the plaintiff sued out of the Supreme Court a writ of *supersedeas*, directed to the said Phillips as constable, by which, after reciting,

" that the said plaintiff had sued out a *certiorari* to the said J. B. T. (the justice) directed that the said judgment and proceedings of the said J. B. T., esq., mentioned in the said warrant, might be certified to the said Supreme Court, &c., the said George Phillips was commanded to desist from removing the said plaintiff from the possession of the said house and premises, &c." The replications conclude with an averment of the due service of this writ on the constable.

These replications have been demurred to.

The principal objection to these replications, taken upon the argument, was, that a *supersedeas* has no greater effect than a rule of this court would possess, and that, although a disobedience to it might subject the officer to the consequences of a contempt, it cannot so avoid the process as to make him a trespasser for anything done by virtue of it.

Regarding the *supersedeas* in its own nature, and devoid of all superadded force from other sources, I am inclined to think there would be much force in this view. The use of this writ by the Supreme Court, to control the process of a subordinate tribunal, as auxiliary to a *certiorari*, appears to be peculiar to our practice. In strictness, according to the common law, this precept appears to have always been awarded in such cases by the court from which the process to be arrested had issued. The order of proceeding was this, *viz.*, when the writ of *certiorari* came to be served on the court below, it became the duty of such court to see that the execution of the judgment to be reviewed was suspended, and the means by which this end was effected was the writ of *supersedeas*. It was the process by which the execution in the hands of the ministerial officer was controlled, but it was the process of the inferior, and not of the superior court. Chancery, indeed, would, in some cases, on the ground of necessity, award this writ, *Fitz. Herb. N. B.* 539, but I have not found any instance in which the Court of King's Bench, by this precept, ever attempted to regulate the final process of other courts. On the contrary, the precedents seem to be clear that the power to exercise such

control was not claimed. Thus in *Prince* v. *Allington*, *Moore* 677, it is said that if justices of the peace receive a *certiorari*, all that they do after is erroneous; but what the sheriff does after, on a warrant received before, is not erroneous, and yet their negligence (that is, the negligence of the justices,) is punishable by attachment as contempt. And in *The King* v. *Spelman*, 1 *Keb.* 93, *pl.* 79, the court, sustaining the same doctrine, remark that the hands of the justices are closed by the issuing of the *certiorari*, though they be not in contempt for what they have done before the delivery of it; but they ought to have awarded a *supersedeas* immediately upon the receipt of the *certiorari*. And the same principle was still more distinctly presented in *Regina* v. *Nash*, 1 *Salk.* 147, the second resolution of the court being embodied in these words: "That this court had no power over the warrant, being granted before the *certiorari* issued, and therefore they refused to make a rule upon the constable to return it." To the same effect are the following authorities; 2 *Hawk. P. C.* 293; *Bac. Ab. Certiorari G.; F. N. B.* 237.

Such appears to have been the procedure at common law; but in this state, a different practice has prevailed. From the earliest times, a *supersedeas* has issued not from the inferior, but from the superior court. In cases of *certioraris* to justices, those magistrates have not used the writ. In fact, Griffith, in his treatise, expressly says, that if the justice has issued an execution before the *certiorari* arrives, he is not to supersede it or stop the constable from executing it. *Grif. Trea.* 145. It is the familiar practice in this state for this prohibitory writ to accompany the *certiorari* out of the superior court, and has been resorted to indifferently with a rule to stay proceedings; and such is the course marked out in the decisions. In the case of *Hull* v. *Larzalere*, 1 *Harr.* 355, on an application founded on a *certiorari* to the Common Pleas for a rule to stay proceedings, this court refused the motion, saying, "such a rule might, as a precedent, lead to abuse. The correct course is, if an execution be issued, to

apply to a judge at chambers, who will, upon a proper affidavit, allow a *supersedeas*." Indicative of the same practice are the cases of *Kingsland* v. *Gould*, 1 *Halst.* 161 ; *Morris* v. *Sparks*, 2 *South.* 513 ; and *Bilderback* v. *Moore*, 2 *Harr.* 510.

The practice, therefore, must be regarded as settled, and it only remains to determine its effect. I consider the *supersedeas*, when thus used, as possessed of no efficacy, beyond that of a rule to stay execution. It does not, *per se*, annul the process in the hands of the officer. But it is to be remembered that the writ of *certiorari* is, of itself, and *proprio vigore*, a *supersedeas*. Neither the inferior court, nor the officer holding the process of such inferior court, can rightfully proceed, after formal notice of its having issued. Every act done after such notice is not only irregular, but is absolutely void, and the parties doing such act are trespassers. *Comy. Dig. Certiorari G.* ; *Chantflower* v. *Priestly, Cro. Eliz.* 914 ; *Cro. Jac.* 379.

Such, then, being the office of the *certiorari*, I think it follows that a *supersedeas*, after service, must be regarded as a formal notice of the fact of the writ of *certiorari* having been taken out. The justice, or the inferior court, receives conclusive information of the purchase of the writ of *certiorari* from the delivery of such writ itself ; and in the same manner the *supersedeas*, or the rule to stay, when served, operates as a notice of similar efficacy to the ministerial officer. After such notification, neither is at liberty to proceed. Consequently, if in the case now before us, the replications had exhibited, in the legal form, the existence of a writ of *certiorari* and a *supersedeas*, duly served upon the constable before the execution of the writ of possession, it would have constituted a full reply to the facts stated in the pleas. But the replications are defective in the omission of a direct averment that a *certiorari* had been issued. It is not sufficient to show, as this pleading does, that a *supersedeas* was issued and served, any more than, in a proper case, it would do for a person who was not an officer to set up an

execution as a justification, omitting to allege that a judgment had been rendered, upon which such process was founded. The mere statement by way of recital, in the *supersedeas*, of a *certiorari*, will not cure the defect, as no issue can be taken on such recital. The replications are bad on this ground.

There are also two other replications to the suit, and seven pleas, which have been demurred to.

These pleas have been put in by King, one of the defendants. The first of them avers that the plaintiff was his tenant-at-will, and the second, that he was his tenant-at-sufference; and each of them then states that the defendant, King, such tenancies having expired, took proceedings before a justice, by virtue of the supplement to the landlord and tenant's act, and turned the plaintiff out of the premises in question, under a writ of possession. The replications to these pleas now to be noticed are in the form of special traverses, and they severally set forth a lease of the premises from the defendant, King, to the plaintiff, for a term of years which had not expired, and they conclude in the common form, with a denial of the tenancies respectively alleged in the pleas.

The first ground taken on the argument against these replications which have been demurred to was, that they should have concluded to the country, and not with a verification. But this objection is not well founded. The substance of a pleading of this character is the matter contained in the inducement, and which always consists of new matter constituting a full defence to the case made by the pleading which it assumes to answer, and such new matter, the party who avers it, must tender himself ready to prove. Upon general principles, this was the rule, and the practice so prevailed until it was altered by rule of court in England, which alteration has probably given rise to the objection in this case. The conclusion of these replications is correct.

It was next said that instead of setting up a lease for a term of years, and which is but an argumentative denial of the tenancies-at-will and by sufferance, advanced in the

pleas, the replications should have taken issue directly on the fact of such tenancies; but this feature is the peculiarity of special traverses. Their design is to explain or qualify the denial which they make, instead of putting it in a direct and unrestricted form. They avoid the fault of argumentativeness by following up the explanatory matter of the inducement with the formal denial with which this pleading of subtle texture concludes; I can perceive no reason which forbids this form in this case. In matter, the inducement contains a full answer to the substance of the pleas; it does not consist of a direct denial, nor is it by way of confession and avoidance. The use of the special traverse seems proper.

It was further suggested, that these replications were faulty, because they set up a matter of fact inconsistent with the finding of the jury on the trial before the justice. It was urged that, on the trial below, the fact of a tenancy-at-will or by sufferance, had been the point of contestation, and had, therefore, been conclusively settled by the verdict. The insistment was, there could be no averment against the record. This, no doubt, is the ordinary rule. Thus a conviction by a magistrate who has jurisdiction over the subject matter is, if no defects appear upon the face of it, conclusive evidence of the facts stated in it. *Brittain* v. *Kinnaird et al.*, 1 *Bro. & Bing.* 432; *Basten* v. *Carew*, 3 *B. & C.* 649; *Fawcett* v. *Fowlis*, 7 *B. & C.* 394. And this quality of conclusiveness, as evidence of the facts stated, appears to belong to every adjudication emanating from a competent tribunal. *Aldridge* v. *Haines*, 2 *B. & Ald.* 395.

No doubt is, therefore, entertained by me, that the finding of the jury, on the trial before the justice, establishes conclusively, as a matter of evidence, every fact involved in that trial, so far as concerns the justice and the constable. As against them, that finding cannot be controverted, so that neither of them can be made liable on the ground that, in truth, a different state of facts existed, showing that the justice had no jurisdiction. Whether a tenancy of a particular kind existed, and whether such tenancy had expired, were

McWilliams v. King and Phillips.

the points of controversy before the justice, and are settled by the verdict, so far as to protect the officers who are required, in discharge of their duty, to act upon the disposition of those questions by the jury. But neither the landlord nor the tenant stand upon a similar footing. As to them, the statute regulating the trial has established a different rule, for it is expressly declared that the landlord shall remain liable in an action of trespass for any unlawful proceedings under the act. I think the intention was to establish a procedure of a provisional and summary nature, by which, for the time, it should be settled as between the landlord and tenant, who should have the immediate possession of the premises in dispute. It does not seem to me at all probable that the legislature designed, by a prompt proceeding before a justice of the peace, which is subject neither to appeal nor review by *certiorari*, to adjudge definitively the right of possession to houses and lands, no matter how difficult or abstruse the questions of law involved, or how valuable the interest at stake might be. My conclusion is, that the decision before the justice, so far as it touches the rights of either landlord or tenant, is a decision *pro hac vice*, and nothing more. Either of them can, in any subsequent legal investigation, deny or disprove the facts upon which such decision is based.

The result is, that on the demurrer to the replication to the fifth plea, and on that to the second replication to the sixth and seventh pleas, the defendant should have judgment; and that on the demurrer to the first replication to the sixth and seventh pleas, the plaintiff should prevail.

CITED in *Hopper and Broomhead* ads. *Chamberlain*, 5 *Vroom* 223; *Mc-Quade* v. *Emmons*, 9 *Vroom* 401.