253 N.J. Super. 551 (1992)
602 A.2d 751
TOWNSHIP OF BLOOMFIELD, PLAINTIFF-RESPONDENT,
v.
ROSANNA'S FIGURE SALON, INC., A NEW JERSEY CORPORATION, ROSANNA IMBRIANO AND DINO IMBRIANO, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 7, 1991.
Decided January 30, 1992.
*554 Before Judges DREIER and BROCHIN.
Daniel Leff argued the cause for appellants.
John A. Bukowski, Jr. argued the cause for respondent (Vincent A. Pirone, attorney; Vincent A. Pirone, on the brief).
The opinion of the court was delivered by BROCHIN, J.A.D.
Plaintiff Rosanna's Figure Salon, Inc. was the lessee of premises in a building owned by Universal Transmission, Inc. The termination date of Rosanna's lease was May 31, 1995, but paragraph 12 of the lease gave the landlord the option to terminate it at an earlier date if the premises were taken by eminent domain or sold to a public body in lieu of condemnation.[1]
*555 On May 24, 1989, Bloomfield acquired the property by a conveyance from Universal. Universal did not notify Rosanna's that it was terminating the lease. Rosanna's and Bloomfield both agree that the conveyance was in lieu of condemnation. Following the conveyance, Rosanna's paid its rent directly to Bloomfield pursuant to Bloomfield's direction.
On November 21, 1989, Bloomfield notified Rosanna's "to vacate and quit the premises ... now occupied by Rosanna's Figure Salon, Inc.... and to deliver possession thereof to the Township of Bloomfield or its duly authorized agents." Rosanna's refused, contending that Bloomfield had accepted its attornment, that its lease would remain in effect until May 31, 1995, and that Bloomfield could acquire possession of the premises before that date only by condemning its leasehold interest.
On March 26, 1990, Bloomfield commenced a summary eviction proceeding in the Special Civil Part of the Law Division, Superior Court, to compel Rosanna's to vacate the premises. Bloomfield's complaint alleged that it had acquired title to the premises on March 24, 1989, that the written lease between the Rosanna's and the prior owner "has been terminated by the plaintiff, Township of Bloomfield, pursuant to the terms therein and is void and of no force and effect," that the Township had demanded possession and served a notice to vacate, and that Rosanna's had refused to comply. Bloomfield asked for immediate possession.
Rosanna's moved to transfer the suit to the Law Division, General Civil Part, pursuant to N.J.S.A. 2A:18-60 and R. 6:4-1(g), and to file an answer asserting that the lease had not been *556 terminated, that the Township had ratified the lease, and that the lease would continue in effect until 1995. Rosanna's also sought to counterclaim for damages and to compel the Township to condemn its leasehold interest. The motion was denied.
Following a trial, the court held that Bloomfield, as the successor landlord, was entitled to exercise the landlord's option to terminate the lease and that its November 21, 1989 notice was effective both as a notice to terminate and, in accordance with N.J.S.A. 2A:18-53 and -56, as demand for possession and notice to quit.
Rosanna's has appealed. It contends that the trial court committed error by refusing to grant its transfer motion; that Universal did not purport to terminate the lease in accordance with paragraph 12 of its terms and Bloomfield did not have the power to terminate it; and that the Special Civil Part lacked jurisdiction to enter a judgment of eviction because Rosanna's had not been served with a valid notice to quit and demand for possession. The Township of Bloomfield argues that by virtue of N.J.S.A. 2A:18-59, the judgment of possession entered in its favor is not appealable.

1

Appealability
N.J.S.A. 2A:18-59 declares that judgments entered in summary actions for possession "shall not be appealable except on the ground of lack of jurisdiction." In Housing Authority, Newark v. West, 69 N.J. 293, 296-301, 354 A.2d 65 (1976), the Supreme Court interpreted that language in a way which substantially reduced or eliminated any practical difference between the scope of appellate review of final judgments entered in summary actions for possession and final judgments entered in ordinary non-jury actions in the Law Division. See Housing Auth. of City of E. Orange v. Mishoe, 201 N.J. Super. 352, 358, 493 A.2d 56 (App.Div. 1985); see also Marini v. Ireland, 56 N.J. 130, 140, n. 1, 265 A.2d 526 (1970).
*557 When Housing Authority, Newark v. West, supra, 69 N.J. 293, 354 A.2d 65, was decided, summary eviction proceedings were heard in the County District Courts. See N.J.S.A. 2A:18-53. Following the adoption of the 1978 constitutional amendment which abolished the County Courts, N.J.Const., Art. VI, § 1, the County District Courts were eliminated by statute effective December 30, 1983, N.J.S.A. 2A:4-3a et seq. A Supreme Court order effective December 31, 1983 established the Special Civil Part within the Law Division of the Superior Court and provided that summary actions for possession would be cognizable there. Those actions are now heard in the Special Civil Part by virtue of R. 6:1-2(a)(3)[2].
The County District Courts were not constitutional courts. Established by statute, they were "courts of limited jurisdiction" within the meaning of N.J.Const., Art. VI, § 1, ¶ 1.[3] Since such "courts and their jurisdiction may from time to time be established, altered or abolished by law," Art. VI, § 1, ¶ 1, the appealability of their judgments was subject to restriction by statute. Cf. McGann v. La Brecque, 91 N.J. Eq. 307, 311, 109 A. 501 (E. & A. 1919) But appeals from the Special *558 Civil Part of the Law Division, where summary actions for possession are now cognizable, are protected from statutory restrictions by N.J.Const., Art. VI, § 5, ¶ 2 ("Appeals may be taken to the Appellate Division of the Superior Court from the Law and Chancery Divisions of the Superior Court and in such other causes as may be provided by law.") See Hager v. Weber, 7 N.J. 201, 205-06, 81 A.2d 155 (1951) (Appellate review is secured against legislative interference by the Judicial Article of the New Jersey Constitution.) We need not decide whether the appealability of judgments resulting from summary actions for possession could be restricted by amendment of our court rules; no such rule amendment has been adopted. See R. 2:2-3(a) ("[A]ppeals may be taken to the Appellate Division as of right (1) from final judgments of the Superior Court trial divisions....") Consequently, we conclude that there is an appeal as of right from a final judgment of the Special Civil Part in a summary dispossess action, and we review the judgment in the present proceeding to determine whether the trial court committed reversible error, not solely to determine whether it exceeded its jurisdiction. See Housing Auth. of City of E. Orange v. Mishoe, supra, 201 N.J. Super. at 357 n. 2, 493 A.2d 56.[4]

*559 2

Termination of the Lease
When private property is taken for a public purpose, the condemnor is constitutionally required to pay only the fair market value of the property, see State v. Gallant, 42 N.J. 583, 587, 202 A.2d 401 (1964), whether or not a tenant has a leasehold interest. See New Jersey Highway Authority v. J. & F. Holding Co., 40 N.J. Super. 309, 314, 123 A.2d 25 (App.Div. 1956). But if the tenant's interest is valuable because it is paying less than fair market rent at the time when the property is taken, the tenant may be entitled to a share of the award. See id. at 316, 123 A.2d 25. The evident purpose of the condemnation clause in Rosanna's lease was to enable its landlord to terminate the leasehold interest in the event of condemnation or its equivalent so as not to be obliged to share the condemnation proceeds with a tenant. In order to acquire the property at issue here, Bloomfield presumably paid what it and Universal agreed was full fair market value. If the municipality has to compensate Rosanna's for its leasehold, Bloomfield will have paid more than fair market value. The result reached by the trial court avoids that unfair result. It has effectuated the intent of the condemnation clause by preventing Rosanna's from gaining a windfall and Bloomfield from having to pay more than fair market value for the property which it acquired. Consequently, we should sustain the trial court's construction of the lease if any fair reading of its language will bear that construction.
The material language of the condemnation clause reads, "If... the landlord shall ... sell and convey the said premises or any portion thereof to a governmental or other public authority seeking to take said land and premises ..., then this lease, at the option of the landlord, shall terminate, and the term hereof shall end as of such date as the landlord shall fix by notice in writing...." (Emphasis added.) The premise of Rosanna's argument is that the "landlord" that exercises the option to *560 terminate and gives written notice of the exercise of the option must be the same as the "landlord" that sells and conveys. No logical reasons are offered to support that premise, and there are at least two substantial considerations that lead to the contrary interpretation.
The first reason is textual. The lease states, "All the terms, covenants and conditions herein contained shall be for and shall inure to the benefit of and shall bind the respective parties hereto, and their heirs, executors, administrators, personal or legal representatives, successors and assigns." [Emphasis added.] Bloomfield therefore succeeded to all of Universal's rights, including the option to terminate the lease. The condition precedent, the transfer in lieu of condemnation, had already occurred.
The second consideration arises from the evident purpose of the condemnation clause of the lease at issue in this case, to maximize the landlord's compensation in the event of a public taking of the property. When property is acquired for a public purpose, a delay between its taking and its utilization is common. If the condemnor is able to defer the termination of the leases of any tenants occupying the property until it is needed, the condemnor will be in a position to maximize its revenues. The prospective condemnee's ability to cede or deny control over termination of leases to the condemnor enhances the condemnee's bargaining power and therefore tends to enhance its compensation. No purpose of either the landlord or, at the time the lease was executed, of the tenant, would have been served by providing that the lease could be terminated only before title passed to the condemnor.
We therefore agree with the trial judge's interpretation of the condemnation clause at issue here. That interpretation accords with its language, serves a rational purpose implicit in the lease, and is fair to Bloomfield and Rosanna's because it achieves a result that is consistent with what is, or ought to be, the reasonable expectations of both parties.
*561 We also agree with the trial judge that Bloomfield's November 21, 1989 notice to Rosanna's was an effective exercise of its option to terminate the lease. The notice did not mention the word "terminate." But Rosanna's knew that Bloomfield had acquired its building for parking spaces and Rosanna's was negotiating with Bloomfield about relocation assistance. In that factual context, the notice from Bloomfield to Rosanna's to "vacate and quit the premises rented by Rosanna's ... from ... Bloomfield... on the 22nd day of February, 1990, and to deliver possession thereof to the Township of Bloomfield or its duly authorized agents" could only have been understood as a notice to terminate the lease as well as the notice to quit and the demand for possession required by N.J.S.A. 2A:18-53 and -56.[5]

3

Motion to Transfer
Following commencement of Bloomfield's summary dispossession action, Rosanna's moved pursuant to R. 6:4-1(g) and N.J.S.A. 2A:18-60 to transfer the case to the General Civil Part of the Law Division and to file an answer and counterclaim for an injunction and damages. The transfer motion was assigned to the same judge who later presided at the trial of this action. She denied the motion to transfer because delay would prejudice Bloomfield's entitlement to federal money to fund the taking and because the controlling issue in the case was the construction of Rosanna's lease, a determination that could readily be made in the context of a summary proceeding. We agree that construction of the lease was the controlling issue, but that proposition leads us to the view that the transfer motion should have been granted.
*562 R. 6:4-1(g) does not refer to the criteria for transfer. N.J.S.A. 2A:18-60 states:
At any time before an action for the removal of a tenant comes on for trial, either the landlord or person in possession may apply to the superior court, which may, if it deems it of sufficient importance, order the cause transferred from the county district court to the superior court. [Emphasis added.]
When the statutory provision for the transfer of an action "of sufficient importance" was first enacted, summary eviction proceedings were heard before justices of the peace. L. 1874, § 18, p. 574. The statute undoubtedly reflects a legislative judgment that substantial matters should be heard before courts of appropriate dignity. See McCrory Stores Corp. v. S.M. Braunstein, Inc., 99 N.J.L. 166, 169, 122 A. 814 (E. & A. 1923), where the Court observed:
It may not be out of place to add that the legislature has not left the tenant of a great store, factory, hotel, & c., wholly to the mercy of a small cause court; for by statute the tenant may * * * apply to a justice of the [former] Supreme Court, who, if he deem the case of sufficient importance, may order a removal into the [former] Circuit Court, where it shall be tried....
Since summary eviction proceedings are now heard by Superior Court judges in Special Civil Part, that consideration no longer seems pertinent. More relevant are the criteria for transfer suggested in Morrocco v. Felton, 112 N.J. Super. 226, 270 A.2d 739 (Law Div. 1970) and approved by this court in Carr v. Johnson, 211 N.J. Super. 341, 349, 511 A.2d 1208 (App.Div. 1986). Among the guidelines suggested by Morrocco, the following still seem applicable to the current court system:
The complexity of the issues presented, where discovery or other pretrial procedures are necessary or appropriate;
....
The presence of multiple actions for possession arising out of the same transaction or series of transactions, such as where the dispossesses are based upon a concerted action by the tenants involved;
The appropriateness of class relief;
The need for uniformity of result, such as where separate proceedings are simultaneously pending in both the Superior Court and the County District Court arising from the same transaction or set of facts, and

*563 The necessity of joining additional parties or claims in order to reach a final result.
Morrocco v. Felton, 112 N.J. Super. at 235-36, 270 A.2d 739.
In general, a motion for transfer should be granted whenever the procedural limitations of a summary action (other than the unavailability of a jury trial) would significantly prejudice substantial interests either of the litigants or of the judicial system itself, and, because of the particular facts and circumstances of a specific case, those prejudicial effects would outweigh the prejudice that would result from any delay caused by the transfer. In the present case, a transfer did not have to cause any significant delay because, for reasons which we will mention, the case could have been disposed of by motion. For the following reasons, failure to transfer adversely affected the interests both of the litigants and of the judicial system in the avoidance of duplicative proceedings.
A judgment entered in a summary eviction proceeding in Special Civil Part does not have a preclusive effect in subsequent litigation. It "settles nothing judicially, not even the right of possession, except for the purposes of that proceeding." 18 New Jersey Practice, County District and Municipal Courts § 1566 at 302 (Robert P. McDonough) (2d ed. 1971). See Construction & Renting Corp. v. Stein, 6 N.J. Super. 239, 241, 70 A.2d 877 (App.Div. 1950), where this court held:
The determination in the dispossess proceedings only affected the respective rights of the landlord and the tenant "for that occasion" and nothing more. Either of them was privileged, in a subsequent proceeding, to deny or disprove the facts upon which such a judgment is based. [Citations omitted.] Thus the tenant might recover damages from the landlord in an action at law in the nature of trespass for any unlawful proceeding under the act.
To the same effect, see Vineland Shopping Center, Inc. v. De Marco, 35 N.J. 459, 462, 173 A.2d 270 (1961) (The judgment in the possessory action had no binding effect upon the decision of the tenant's subsequent damage action); Berzito v. Gambino, 114 N.J. Super. 124, 127, 274 A.2d 865 (Cty.Dist.Ct. 1971), rev'd on other grounds, 119 N.J. Super. 332, 291 A.2d 577 (App.Div. 1972), modified, 63 N.J. 460, 308 A.2d 17 (1973) (Findings of the *564 court in a prior dispossess suit are not res judicata in a later suit for rent); Terrill Manor, Inc. v. Kuckel, 94 N.J. Super. 25, 28, 226 A.2d 733 (App.Div. 1967) (A judgment of dismissal will not prevent a redetermination of any issue as res judicata); Alfour Inc. v. Lightfoot, 123 N.J. Super. 1, 301 A.2d 197 (Cty. Dist.Ct. 1973) (see cases cited therein).
That characteristic of summary eviction proceedings is particularly significant in the present case. Rosanna's does not dispute Bloomfield's right to eventual possession of the property. The real subject of the dispute between the parties is whether Bloomfield was entitled to gain possession without further payment because it had effectively terminated the lease or whether the municipality would have to exercise its power of eminent domain and pay fair market value for Rosanna's leasehold interest. Resolution of that dispute depends, as the trial court correctly noted, upon its construction of the lease and of Bloomfield's November 21, 1989 notice. If the terms of the lease gave Bloomfield the right to terminate it because of the municipality's acquisition of the property in lieu of condemnation and if Bloomfield effectively exercised that right or, if necessary, could still exercise it by a different form of notice, Rosanna's had no leasehold interest to be condemned and it could be summarily evicted. Absent one or the other of those two conditions, Rosanna's had a leasehold interest which extended to March 31, 1995, terminable only by agreement or by condemnation.
The appropriate remedy for a party which contends that its property has been taken by a public body without just compensation is an action for inverse condemnation. See N.J.S.A. 20:3-6; Van Dissel v. Jersey Central Power & Light Co., 181 N.J. Super. 516, 438 A.2d 563 (App.Div. 1981), certif. denied, 89 N.J. 409, 446 A.2d 142 (1982), vacated, 465 U.S. 1001, 104 S.Ct. 989, 79 L.Ed.2d 224 (1984), dismissal aff'd on remand, 194 N.J. Super. 108, 476 A.2d 310 (App.Div.) certif. denied, 99 N.J. 186, 491 A.2d 690 (1984); Matter of Jersey *565 Central Power and Light Co., 166 N.J. Super. 540, 400 A.2d 128 (App.Div. 1979). If Rosanna's institutes such an action, a central issue will be whether Bloomfield has effectively terminated the lease. Relitigation of that issue in an action for inverse condemnation will be almost inevitable unless barred by the present suit. Therefore, a decision in this proceeding that does not have preclusive effect on the issue would be an egregious waste of the resources of the court system and of the litigants. If the court had transferred this case to the General Civil Part before its decision on the merits, the judgment which was entered would prevent relitigation to the same extent as any other Law Division judgment entered in a plenary proceeding. Cf. McCrory Stores Corp. v. Braunstein, supra, 99 N.J.L. at 169, 122 A. 814. Consequently, the doctrine of collateral estoppel would have been dispositive of Rosanna's claim. See Mazzilli v. Accident & Casualty Ins. Co., 26 N.J. 307, 315-18, 139 A.2d 741 (1958); Van Dissel v. Jersey Central Power & Light Co., supra, 181 N.J. Super. at 519-21, 438 A.2d 563; Gareeb v. Weinstein, 161 N.J. Super. 1, 13-14, 390 A.2d 706 (1978). For that reason, the trial court should have granted Rosanna's motion to transfer this matter for disposition as a plenary Law Division action.
N.J.S.A. 2A:18-61 states, "[a] summary action for the removal of a tenant, commenced in a county district court[6], but transferred to the superior court, shall be tried before a jury, unless a jury is waived." Rosanna's did not waive a jury. In the particular circumstances of this case, however, Rosanna's was not entitled to a jury. Before any testimony had been offered, the court determined a jurisdictional motion on the basis of undisputed facts. In the course of ruling on that motion, the judge correctly decided both that the court had jurisdiction and that Bloomfield had effectively terminated the *566 lease and served the requisite notices on Rosanna's. Although the parties were permitted to present witnesses, the trial evidence was either duplicative of the undisputed facts or was entirely superfluous. There are no material facts which would be properly triable to a jury in the event of a remand, and a remand would therefore be useless.
In order to avoid a useless remand, we therefore exercise our original jurisdiction, R. 2:10-5, and enter the same judgment, on the same grounds, as the trial court has done, but with the same preclusive effect as if the judgment had been entered on Bloomfield's motion following a transfer pursuant to R. 6:4-1(g) and N.J.S.A. 2A:18-60.
NOTES
[1] Paragraph 12 of the lease read as follows:

If the land and premises leased herein ... shall be taken under eminent domain or condemnation proceedings ... or if in lieu of any formal condemnation proceedings or actions, the Landlord shall grant an option to purchase and or shall sell and convey the said premises or any portion thereof, to the governmental or other public authority, agency, body, or public utility, seeking to take said land and premises ..., then this lease, at the option of the landlord, shall terminate, and the term hereof shall end as of such date as the landlord shall fix by notice in writing; and the Tenant shall have no claim or right to claim or be entitled to any portion of any amount which may be awarded as damages or paid as the result of such condemnation proceedings; and all rights of the Tenant to damages, if any, are hereby assigned to the Landlord.... or paid as the purchase price for such option, sale or conveyance in lieu of formal condemnation proceedings; .... The tenant covenants and agrees to vacate the said premises ... and deliver up peaceful possession thereof to the landlord or to such other party designated by the landlord in the aforementioned notice.
[2] Pressler, Current N.J. Court Rules, comment on R. 6:1 (1991) says:

The concept of a special court of limited jurisdiction, functioning in an expedited manner, was too useful not to survive the demise of the county district courts and those courts, by reason of Supreme Court order entered on December 13, 1983, continued virtually intact as the Special Civil Part, a Superior Court division of limited jurisdiction governed by the Part VI rules and to which the developed body of district court case law continues largely applicable. [Citation omitted.] The rules were not immediately amended to account for the fact that the court of limited jurisdiction was no longer a separate court but rather a part of the Superior court which took cognizance of particular matters not by reason of jurisdictional distribution but rather by reason of allocation of a specific category of Superior court business. The allocation was accomplished by Supreme court order. The rules were, however, comprehensively amended effective January, 1989, to codify the substance of the Supreme court order.
[3] Before its 1978 amendment, Art. VI, § 5, ¶ 2 referred to "inferior courts of limited jurisdiction." (Emphasis added.)
[4] Of course, trial and appellate courts retain discretion whether or not to grant stays of judgment pending appeal. See R. 2:9-5. Since the purpose of the statutory remedy of summary dispossession is to provide landlords with a prompt method for recovery of possession of their property, leaving the litigants free to recover damages in a subsequent plenary action, courts, in most cases, are likely to deny stays of judgments pending appeal from summary proceedings.

In Marini v. Ireland, 56 N.J. 130, 147, 265 A.2d 526 (1970), the Supreme Court admonished the trial courts as follows:
By way of warning, however, it should be noted that the foregoing does not constitute an invitation to obstruct the recovery of possession by a landlord legitimately entitled thereto. It is therefore suggested that if the trial of the matter is delayed the defendant may be required to deposit the full amount of unpaid rent in order to protect the landlord if he prevails. Also, an application for a stay of an order of removal on [or?] appeal should be critically analyzed and not automatically granted.
[5] Rosanna's does not claim that service of the November 21, 1989 notice failed to comply with the requirements of N.J.S.A. 2A:18-53 and -56.
[6] "Whenever any reference is made to in any statute to the... county district court, ... it shall be given effect as though the reference were to the superior court...." N.J.S.A. 2A:4-3d.