630 A.2d 1212

LUIS MOYANO, PLAINTIFF, v. EDRIS WILLIAMS, DEFENDANT.

Superior Court of New Jersey
Law Division Essex County

Decided June 22, 1993.

Plaintiff appeared pro se.

*Gustavo G. Garcia* for defendant.

FAST, J.S.C.

This opinion is based on the application of the doctrine of res judicata to a subsequent action for the summary dispossession of a tenant by the same landlord. I have found no other opinion holding that this doctrine may be applied to a second summary dispossess action.

## FACTS

This case relates to a two-family home in Orange, New Jersey. Plaintiff bought this property at an auction conducted by the City of Orange in December 1987. At that time, defendant had been the sole tenant (since 1976) pursuant to a month-to-month tenancy at a monthly rent of $350 for the entire property, notwithstanding that it was a two-family building.

By a notice dated May 1988 plaintiff gave defendant a notice of increase to $800. Defendant did not pay that increase and plaintiff sought her eviction in a summary dispossess action. On August 19, 1988, the day the action had been scheduled for trial, it was settled, the settlement calling for defendant to pay the increased rent of $800. Both parties were represented by their own counsel in coming to that agreement.

By notice dated February 16, 1989, to be effective April 1, 1989, the landlord sought another increase in rent, this time to $1350.

Defendant did not pay that increase either, and again plaintiff sought her eviction in a summary dispossess action based upon the nonpayment of that new rent. When the case came to trial, both April and May 1989 rents were past due. The trial of the summary dispossess action was held in the Special Civil Part of the Law Division. Both parties were represented by the same counsel who participated in the settlement agreement signed in August 1988. The issue presented to the court was whether the increase to $1350 was enforceable by the landlord. As stated by the court in announcing its decision, "The real question facing the court simply given the increase is whether the increase is unconscionable." The court determined that the increase was not shown to have been unconscionable and found the two months' rent of $2700 due and owing. Based on that adjudication, defendant paid the rent and the complaint was dismissed.

Defendant continued to pay that rent through September 1991; however, commencing October 1991 she failed to pay her rent. Plaintiff therefore again commenced a summary dispossession action. The matter came before me for trial after the entry of a default judgment (which was vacated), the action being transferred to the Law Division and a counterclaim being filed based on the allegedly unconscionable rent. During those procedural steps and the pendency of the action, defendant was required to pay $700 per month, on account and without prejudice. Defendant was also permitted to raise the defense of breach of the implied covenant of habitability (commonly called a *"Marini"* defense).

A preliminary determination in this action was that this property, being fewer than three units, was exempt from the Orange rent control ordinance.

## DISCUSSION OF LAW

### THE COMMON LAW APPROACH

The next threshold issue was whether the prior determination by the court, that the rent set at $1350 was binding on the parties

in this action by virtue of the doctrine of res judicata or whether defendant could relitigate that issue in this action. I find that the doctrine is applicable and does bind the parties as to that issue.

The earliest reported case to discuss res judicata as a consequence of a summary dispossession action in New Jersey is *McWilliams v. King and Phillips*, 32 *N.J.L.* 21 (Sup.Ct.1866). That action was by a tenant against his former landlord and a constable, essentially for what we now call a wrongful eviction. (In that case the form of ancient pleading was entitled an "action in trespass, *quare clausum fregit.*") The action was dismissed as to the constable "to protect the officers who are required, in discharge of their duty, to act upon the disposition of those questions by the jury." The court continued, as to the landlord, saying:

> But neither the landlord nor the tenant stand upon a similar footing. As to them, the statute regulating the trial has established a different rule, for it is expressly declared that the landlord shall remain liable in an action of trespass for any unlawful proceedings under the act. I think the intention was to establish a procedure of a provisional and summary nature, by which, for the time, it should be settled as between the landlord and tenant, who should have the immediate possession of the premises in dispute. It does not seem to me at all probable that the legislature designed, by a prompt proceeding before a justice of the peace, which is subject neither to appeal nor review by certiorari, to adjudge definitively the right of possession to houses and lands, no matter how difficult or abstruse the questions of law involved, or how valuable the interest at stake might be. My conclusion is that the decision before the justice [of the peace], so far as it touches the rights of either landlord or tenant, is a decision *pro hac vice,* and nothing more. Either of them can, in any subsequent legal investigation, deny or disprove the facts upon which such decision is based.
> [*Id.* at 28.]

In other words, notwithstanding that the landlord had obtained a judgment for possession in a summary action before a justice of the peace, that judgment was not binding on the parties in a subsequent action by the tenant against the landlord for wrongful eviction. The doctrine of res judicata did not bar the subsequent action for the alleged wrongful eviction.

The concept continued through the years, eventually to be stated simply as:

> The judgment in a summary dispossession action is not conclusive or binding as between the parties in subsequent litigation. Consequently, a judgment in such an

action in favor of the landlord creates no estoppel by judgment against the landlord, nor is the judgment res judicata. It has further been held that any matters determined in lessor's dispossess proceedings are not res judicata. [*Azar v. Jabra*, 167 *N.J.Super.* 543, 552, 401 A.2d 293 (Cty.Ct.1979) (citations omitted) ].

What has been been so often overlooked in coming to that conclusion, from the cases following *McWilliams v. King and Phillips, supra,* 32 *N.J.L.* 21, is that the application of the doctrine requires that the *relief sought* be the same in the subsequent action as in the initial action sought to be invoked as a bar to the later action. *McWilliams* sought different relief in the subsequent action, i.e., an action in trespass (wrongful eviction), rather than a second action for possession. Likewise, a suit by a landlord for a money judgment based upon the non-payment of rent would not require the application of the doctrine because the relief sought differs from that given in the earlier action, a judgment for possession.

That the relief sought must be the same in the subsequent action is stated in *Culver v. Insurance Co. of North America,* 115 *N.J.* 451, 559 A.2d 400 (1989): "The application of *res judicata* doctrine requires substantially similar or identical causes of action and issues, parties, *and relief sought." Id.* at 460, 559 A.2d 400 (emphasis added). Also, *see Charlie Brown of Chatham v. Board of Adjustment,* 202 *N.J.Super.* 312, 327, 495 A.2d 119 (App.Div. 1985) (emphasis added and citations omitted):

> *Res Judicata* as a principle of law bars a party from relitigating a second time that which was previously fairly litigated and finally determined. The general requirements for the invocation of the principle are a final judgment by a court or tribunal of competent jurisdiction, identity of issues, parties, cause of action and *thing sued for.* Collateral estoppel is that branch of the broader law of *res judicata* which bars relitigation of any issue or fact actually determined in a prior action, generally between the same parties while involving a different claim or cause of action. The terms are sometimes used interchangeably and applied broadly.

My holding may be easily illustrated by the hypothetical situation that if a landlord sued to summarily evict a tenant based

on non-payment of rent, for example for January and February 1993, and if the complaint were dismissed based on a finding that the rent had been paid for those months, can anyone reasonably argue that in March the landlord could again sue for the summary dispossession of that tenant based on the alleged nonpayment for January, February and March? Of course the landlord could pursue possession based on the alleged nonpayment for March, but I do not believe that any system of justice seeking a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay (*R*. 1:1–2) would tolerate that "second bite of the apple."

As stated in *Passaic Nat. Bank v. E. Ridgelawn Cemetery*, 137 *N.J.Eq.* 603, 608, 45 *A.2d* 814 (E & A, 1946):

> The doctrine of *res judicata* is grounded in the universally accepted principle that the party has litigated, or has had an opportunity to litigate, the same subject matter on the merits in a prior action in a court of competent jurisdiction, and therefore is on grounds of natural justice precluded from again litigating it to the vexation of his adversary and the unsettlement of established rights. It is a species of estoppel.

As a matter of natural justice, defendant should not be free to vex the landlord by relitigating the issue of the raise in rent to $1350. I find that the principle applies to bar the retrial of that issue in this action.

## THE STATUTORY/PROCEDURAL APPROACH

Notwithstanding that this further discussion is dictum (as superfluous to the issues in this case), I find it appropriate to question the inapplicability of the doctrine in actions for relief of a different nature, also, at this time. Virtually all reported cases discussing the doctrine of res judicata as applicable to subsequent actions (after a summary action for possession) have either stated that the basis for the non-applicability was the lack of the right to appeal, or relied on cases which so stated. That proposition likewise, in all probability, follows the statement in *McWilliams v. King and Phillips, supra*, 32 *N.J.L.* at 21 that

> It does not seem to me at all probable that the legislature designed, by a prompt proceeding before a justice of the peace, which is subject neither to appeal nor

review by certiorari, to adjudge definitively the right of possession to houses and lands, no matter how difficult or abstruse the questions of law involved, or how valuable the interest at stake might be. My conclusion is that the decision before the justice [of the peace], so far as it touches the rights of either landlord or tenant, is a decision *pro hac vice,* and nothing more.

That premise is now questionably valid: summary actions for possession are now tried by Superior Court judges sitting in the Special Civil Part (rather than justices of the peace), the matter may be transferred so as to permit discovery or the joinder of additional issues (either by way of defense or seeking additional affirmative relief), and there is even an appeal as of right from a final judgment of the Special Civil Part in a summary dispossess action. *Bloomfield Twp. v. Rosanna's,* 253 *N.J.Super.* 551, 602 *A.*2d 751 (App.Div.1992), citing, among others, *R.* 6:4–1(g) and *N.J.S.A.* 2A:18–60. Therefore, *cessat ratione, cessat lex;* the premise no longer being viable, the consequence is subject to question.

Some of the earlier actions also referred to the then prohibition (by statute) of removal of summary dispossess actions to a "higher court." Of course that is no longer so; an action for summary dispossession now may be removed to the Law Division. *Bloomfield Twp., supra,* 253 *N.J.Super.* at 551, 602 *A.*2d 751; *N.J.S.A.* 2A:18–60; *R.* 6:4–1(g).

The doctrine, although not reported in any opinion as applicable to a second summary action for possession, no longer has support from its original premise. I therefore conclude that defendant's argument that the increase was unconscionable must be denied. The issue has already been determined by a final judgment in an action between these same parties seeking the same relief (i.e., possession) in a court of competent jurisdiction, with a right of appeal. The rent is therefore confirmed at $1350 per month.

## THE DEFENSE OF BREACH OF THE COVENANT OF HABITABILITY AND COUNTERCLAIM FOR EXPENSES ADVANCED FOR REPAIRS BY DEFENDANT

Defendant has testified as to her complaints about the condition of the property and repairs made by her. This point considers

her complaints for the period commencing with March 1992 as a result of the settlement made by the parties in February 1992 (as to which, see the next point).

Plaintiff has admitted that he has made no repairs since February 1992 (although both parties testified that he had made repairs before February 1992). He also testified that defendant made no complaints about any post–1992 conditions, although he also testified that he was not allowed access to make repairs after then. Defendant had testified to having complained about certain conditions, and I found her testimony to have been the more consistent and credible.

Defendant has testified that she paid the following for necessary repairs, and I find them to have been necessary for the reasonable use of the premises, and reasonable in amount. She shall therefore be given credit for:

1. $5,337.74 to Otto Masonry, July 1992
2. $94.75 to Atlantic Fuel for repairs or replacement of faulty items, October 1992.
3. $175 (Same), January 1993
4. $51.79 To Rossi & Co for paint items, November 1992
5. $485 to Lipton Plumbing & Heating for hot water heater and plumbing repairs, August 1992.
6. $379.75 to Arrow or Atlantic Fuel for boiler repairs and not disputed by plaintiff.

Notwithstanding those repairs (and others made by defendant but not having been proved as made or paid within the period since February 1992), defendant testified as to several habitability complaints still existing and as having existed since the February 1992 settlement. These complaints included missing steps to the third floor (which contain two rooms otherwise usable as bedrooms), numerous leaks with rain coming in, resulting holes, electrical problems and other items of serious deterioration.

█ Because of the conflict in the testimony relating to the condition and composition of the building, I personally visited the premises (on notice to both parties) in order to better understand those conflicts. I found that the conditions complained of by

defendant were, at the time of the visit, essentially corroborated. It is hard to state which condition was the worst, but the missing steps from the second to the third floor were the most obvious, making the third floor inaccessible. (As a digression, I also compliment defendant for her housekeeping standards.)

The notice increasing the rent to $1350 set the rent for the first floor at $550 and for the second floor at $800. Based on my view of the property, with the conditions which breached the covenant of habitability, and estimating the fair rent (there being no credible testimony otherwise), I find that a fair rent for the first floor would be $500 and for the second floor would be $350 (totalling disregarding any use for the third floor), thereby allowing an abatement of $500 per month from the $1350 rent for the building, commencing with the March 1992 rent. As noted in the first point herein, if the property had no breach of the covenant of habitability, I would be bound by the rent of $1350 per month, which, after having seen the property, (including the size of the lot) I likewise would have found to have been reasonable.

Defendant has failed to sustain her burden to prove that plaintiff was responsible for providing the fuel for heating. The only objective evidence that was given proved that she had paid for fuel numerous times over a prolonged period. Claims for reimbursement for those expenses are therefore denied.

## THE DEFENSE OF "SETTLEMENT"

When the underlying summary action for possession was first scheduled for trial (February 1992), the parties entered into a stipulation of settlement based on an acknowledgement of the rent being $1350 per month. Defendant at that time had not paid rent for October, November or December 1991, nor January or February 1992. The arrears ($6750) were to have been paid over a period of time, with the last payment to have been made by a stated date. However, defendant failed to make the agreed upon payments and plaintiff obtained a judgment for possession. Defendant was thereafter served with a warrant for removal and

obtained an order to show cause, essentially based on her allegations of breach of the covenant of habitability.

No evidence was presented to show that the February settlement was either the result of overreaching by plaintiff or unconscionable. I therefore conclude that the settlement must be enforced as a matter of public policy, *Pascarella v. Bruck*, 190 *N.J.Super.* 118, 462 *A.*2d 186 (App.Div.1983), and therefore as noted above, have limited defendant to her habitability complaints for the period commencing in March 1992. This subsequent period was not included in the settlement; no testimony was given to the contrary, and I find that the subsequent period was beyond the contemplation of the parties.

Based upon all of the above, judgment will be entered granting relief to defendant allowing the credits determined above and abating the rent as found above and dismissing the complaint upon proof of payment within 10 days of the rent found due.