**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1989-16T4

FENNER REAL ESTATE, INC.,
c/o ESTATE OF WALTER FENNER,

    Plaintiff-Respondent,

v.

ELLEN KRAMER,

    Defendant-Appellant.

_____

Submitted May 3, 2018 — Decided June 20, 2018

Before Judges Rothstadt and Gooden Brown.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Docket No. DC-
8017-16.

Ellen Kramer, appellant pro se.

Respondent has not filed a brief.

PER CURIAM

    Defendant Ellen Kramer appeals from the Special Civil Part's

December 15, 2016 judgment in favor of plaintiff Fenner Real Estate

Inc., for the Estate of Walter Fenner.  We affirm.

On January 20, 2016, plaintiff filed a two-count complaint against defendant for breach of contract and unjust enrichment. The complaint alleged that plaintiff and defendant entered into a written residential lease agreement for a term ending August 25, 2008. However, plaintiff filed an eviction action resulting in defendant being evicted from the property, due to defendant owing plaintiff "past due and unpaid rent in the amount of $18,985.00[,]" which defendant failed to pay as required by the lease agreement. Defendant filed an answer asserting the claim for rent was settled for $3000 by written agreement on November 26, 2012. Defendant also filed a counterclaim for repairs exceeding $15,000 that plaintiff allegedly promised to reimburse defendant by rent reductions.

The matter was tried on December 15, 2016. The judge took testimony from Ken Copeland, the executor of the estate, and defendant, both of whom were self-represented. Copeland confirmed that the parties entered into a lease agreement in 2006 for the rental of a three-bedroom house. After the lease term ended, the tenancy continued as a month-to-month lease. However, in 2012, plaintiff filed an eviction action in landlord-tenant court against defendant for non-payment of rent.

On November 26, 2012, when they appeared for trial, the parties entered into a consent judgment stipulating:

1. [Defendant] agrees to the immediate entry of a judgment for possession and that the warrant of removal may issue and be served upon [defendant] at [plaintiff's] request, as permitted by law. [Plaintiff] agrees that the warrant of removal cannot be executed (no eviction) until [January 7, 2013] ("the move out date"), unless [defendant] fails to comply with paragraph 2(B).

2. . . .

   B. [Defendant] shall pay [$3000], as follows: [Defendant] to pay [$3000] on [November 26, 2012] via bank check to be allowed to remain on the premises. [Defendant] acknowledges arrears are due.

3. A. If [defendant] does not make all payments required in paragraph 2(B) of this Agreement, [defendant] agrees that [plaintiff], with notice to [defendant], can file a certification stating when and what the breach was and that the warrant of removal can then be executed upon, as permitted by law, prior to the agreed upon [move out date].

   B. Even if [defendant] does make all payments required in paragraph 2(B), [defendant] still agrees to move no later than [January 7, 2013]. If [defendant] does not move by that date, [plaintiff] can have [defendant] evicted, as permitted by law. The [thirty] day period to execute upon a warrant of removal is agreed between the [parties] to be extended to incorporate the move out date.

Defendant, who was self-represented, signed the consent judgment, which was prepared by plaintiff's attorney, made the required payment of $3000, and vacated the premises on January 5, 2013.

A-1989-16T4

According to Copeland, who executed the consent judgment on behalf of plaintiff, the $3000 was a "one[-]time payment which didn't satisfy any past due amounts[,]" did not constitute a waiver of the remaining amount owed, which exceeded $35,000, and only allowed defendant to remain in the property until January 7, 2013. Copeland's attorney had explained to him that "there's two processes[,] [f]irst you get them removed and then you have to go to special civil or small claims to get the past due amount." Copeland testified defendant still owed past due amounts totaling $10,150 for 2008, $11,270 for 2009, $9604 for 2010, $2220 for 2011 and $7161 for 2012. Copeland also submitted repair receipts totaling approximately $4000 for damage to the property that he allegedly discovered after defendant moved out and repaired prior to renting the house again.

Copeland testified that he did not file the complaint sooner because he had "no forwarding address" for defendant and was unable to locate her. As to defendant's counterclaim, Copeland testified that he was never notified in writing about any repairs defendant made to the property. However, he acknowledged that in 2011 following Hurricane Irene, defendant notified him orally that she paid $1600 to a restoration company "to pump out approximately ten to twelve inches of water out of the basement." Copeland testified

that he gave defendant a $500 credit for that expense in an effort "to be nice."

Defendant acknowledged entering into the lease agreement and falling behind in rent payments. She agreed that some arrears existed, but disputed the amount. She admitted signing the consent judgment on November 26, 2012, when they went to landlord/tenant court. However, according to defendant, "there was no amount written on that agreement or anywhere else" indicating that any additional monies were owed and she "agree[d] to pay [$3000]" and to be evicted believing it was "a settlement for what [she] owe[d]." She testified she borrowed the $3000 from her elderly father believing that amount would satisfy her payment obligation in full and "would never, ever, ever have signed that piece of paper if [she] knew three and a half to almost four years later [she] was going to be sued." She disputed Copeland's claim that the lawsuit was delayed because he did not have her address, testifying that he later sent her a water bill.

Although defendant disputed the amount Copeland claimed she owed for past due rent, she had no bank statements or other evidence to show that she made payments which were not credited. She further disputed Copeland's claim for repairs made to the property after she moved out, asserting that the house was in a state of disrepair when she moved in and, despite her pleas for

him to remediate these problems, she was "forced . . . to live in a place that was uninhabitable." She explained that she rented the house in that condition because she was "paying [$1400] instead of [$1800] or [$2000 per month] for a three bedroom . . . house" in that area.

As to her counterclaim, defendant testified that because of the condition of the house, "[she] paid thousands of dollars" for out of pocket expenses during the tenancy but only had some of the receipts, "[n]ot all of them." Defendant's receipts totaled $5631 for mold remediation stemming from Hurricane Irene, exterminators for vermin in the house, damage from termites and other expenses.

After the bench trial, the judge entered judgment in favor of plaintiff. In his oral decision, the judge noted that defendant admitted renting the property and acknowledged the lease agreement, which was admitted into evidence. According to the judge, it was also undisputed that a prior landlord/tenant case resulted in defendant executing "a stipulation of settlement and agreement[,]" on November 26, 2012, paying $3000, and vacating the property. The judge explained that "ordinarily[,] . . . the case would be over." However, the settlement agreement expressly indicated that "additional monies" were due and owed. Consequently, the judge concluded that "clearly[,] it wasn't an accord [and] satisfaction."

In rejecting plaintiff's claim for damage to the property, the judge explained that "[his] lawsuit was for back rent" only. The judge noted, however, that although this was "not a Marini[1] hearing[,]" defendant had filed a counterclaim as an offset for "certain out of pocket expenses for which she's testified to and provided receipts for" and "[t]here's really not a whole lot of dispute . . . that the property was not in the best of condition." The judge therefore narrowed the disputed issues to "the amount of money owed for the rent and the amount of money [defendant] claim[ed] [she] paid out of pocket to help remediate . . . the property so that [she] could live there." The judge found that although plaintiff proved that he was owed $30,504 in back rent, his recovery was limited to the jurisdictional limit of the Special Civil Part of $15,000,[2] which "would be offset by [$]5631" that defendant proved "by a preponderance of the evidence was paid out of pocket for a net award to . . . plaintiff of [$9369]." This appeal followed.

---

[1] Marini v. Ireland, 56 N.J. 130 (1970) (allowing a defendant tenant to raise habitability issues in a landlord's summary dispossess action for non-payment of rent and obtain a hearing thereon, provided the tenant deposits the rent with the court clerk).

[2] See Rule 6:1-2(a)(1) (limiting claims cognizable in the Special Civil Part to those in which the amount in controversy does not exceed $15,000).

A-1989-16T4

On appeal, defendant raises the following points for our consideration:

> I.   AN ACCORD AND SATISFACTION WAS REACHED IN THIS CASE AND A NEW CONTRACT BETWEEN THE PARTIES WAS ENTERED INTO AS A SUBSTITUTION FOR THE EXISTING OBLIGATION AND THE PROMISES MADE BY DEFENDANT, PAYMENT AND VACATION OF PREMISES, WERE FULLY EXECUTED THUS SATISFYING THE ESSENTIAL CONDITIONS OF AN ACCORD AND SATISFACTION.
>
> II.  THIS DISPUTE RAISES A PURE CONTRACT INTERPRETATION ISSUE INVOLVING THE INTERPRETATION OF THE NOTICE TO EVICT. THE TRIAL COURT ERRED BY TAKING A SINGLE CLAUSE OUT OF CONTEXT AND DID NOT GIVE ANY CONSIDERATION TO THE CIRCUMSTANCES SURROUNDING THE SIGNING OF THE AGREEMENT, VIEWING THE DISPUTED INSERTED PROVISION APART FROM THE OBVIOUS PURPOSE OF THE DOCUMENT. THEREFORE, FRUSTRATING THE EXPLICIT REASON FOR THE SETTLEMENT WHICH WAS TO RESOLVE BOTH EVICTION AND ALL RENT PAST DUE.
>
> III. THE JUDGE'S FAILURE TO ALLOW DEFENDANT'S ORAL EVIDENCE OF OUT OF POCKET EXPENSES . . . , IN SUPPORT OF HER COUNTERCLAIM, SHOULD ALSO BE REVERSED AS ERRONEOUS AND DEFENDANT'S COUNTERCLAIM ALLOWED IN FULL . . . .

Our scope of review of a "trial court sitting in a non-jury case" is limited. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974)). We do not disturb the

"factual findings and legal conclusions of the trial [court]" unless we are "convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Id. at 412 (quoting Rova Farms, 65 N.J. at 484). Equally well-established is the principle that our review of "[a] trial court's interpretation of the law" is plenary and "not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Here, we are satisfied that the decision reached by the judge was amply supported by the record. Defendant contends that "an accord and satisfaction was reached" when the parties signed the settlement agreement discharging the entire claim and the trial judge failed to read the entire agreement in context and instead read the arrears clause in isolation. Defendant further asserts that plaintiff's delay in pursuing her for back rent demonstrates that "the intent of the settlement . . . was meant to be final and dispositive, not a mere offer of compromise."

"An accord and satisfaction is an agreement which, upon its execution, completely terminates a party's existing rights and constitutes a defense to any action to enforce pre-existing claims." Gunter v. Ridgewood Energy Corp., 32 F. Supp. 2d 166, 183 (D.N.J. 1998) (quoting Nevets C.M., Inc. v. Nissho Iwai Am.

Corp., 726 F. Supp. 525, 536 (D.N.J. 1989), aff'd sub nom., 899 F.2d 1218 (3d Cir. 1990)). "The traditional elements of an accord and satisfaction" are "(1) a dispute as to the amount of money owed; (2) a clear manifestation of intent by the debtor to the creditor that payment is in satisfaction of the disputed amount; (3) acceptance of satisfaction by the creditor." A. G. King Tree Surgeons v. Deeb, 140 N.J. Super. 346, 348-49 (Cty. Dist. Ct. 1976). "[A]n accord and satisfaction requires a clear manifestation that both the debtor and the creditor intend the payment to be in full satisfaction of the entire indebtedness." Zeller v. Markson Rosenthal & Co., 299 N.J. Super. 461, 463 (App. Div. 1997). "In the absence of evidence of such intention, the defense of accord and satisfaction is unavailing to defeat a creditor's claim for payment in full." Id. at 466.

Here, both parties testified at trial regarding their intent in entering the settlement agreement. Although defendant testified that her $3000 payment was in full satisfaction of the arrears and that she would have never agreed to the settlement if she knew that she would still owe past due rent, she never received anything to that effect in writing. On the contrary, the agreement specified that defendant acknowledged arrears were due, which was consistent with Copeland's intent and understanding of the

agreement. Thus, we are satisfied that the judge correctly rejected defendant's defense of an accord and satisfaction.

Defendant further argues that it is unfair that plaintiff was "allowed to keep the [$3000], . . . avoid the trouble, expense and uncertainty of an eviction proceeding, . . . promptly . . . rent the premises [and] still be allowed to pursue [her] in court for the original balance." Defendant asserts that because she complied with the settlement agreement, it is an "injustice" for the judge to award judgment to plaintiff when he "gave up absolutely nothing." According to defendant, in so doing, the judge "nullified the purpose of the settlement."

The terms of a settlement agreement are generally "given their plain and ordinary meaning." M.J. Paquet, Inc. v. N.J. Dep't of Transp., 171 N.J. 378, 396 (2002). A court cannot interpret a settlement agreement in a manner that is broader than the parties intended, nor may it vary the material terms. Grow Co. v. Chokshi, 403 N.J. Super. 443, 464 (App. Div. 2008).

Settlement agreements that require tenants to pay and vacate the premises (commonly called a "'pay and go' settlement"), provide "that although a judgment for possession is being entered, customarily on the day that the settlement is made, the tenant must nevertheless make some agreed-upon payment and must move out by an agreed-upon date." Franco v. Rivera, 379 N.J. Super. 273,

274 n. 1 (Law Div. 2005). However, because "[p]ossession of the premises is the only available remedy [to a landlord] for non-payment of rent," and "money damages may not be awarded in a summary dispossess action[,]" Hodges v. Sasil Corp., 189 N.J. 210, 221 (2007), neither a landlord nor tenant are precluded from seeking to recover money damages in a subsequent proceeding. Moyano v. Williams, 267 N.J. Super. 213, 216-17 (Law Div. 1993). See Berzito v. Gambino, 63 N.J. 460, 469 (1973) (holding tenants were not precluded from seeking to recover rent paid prior to court's ruling in summary dispossession action that landlord had breached the warranty of habitability).

Here, plaintiff could not obtain money damages through the settlement agreement negotiated in the summary dispossess action filed against defendant in landlord/tenant court. Thus, he had no choice but to seek repayment of back rent through a subsequent proceeding in the Special Civil Part. Additionally, defendant preserved her right to file a counterclaim to recover money damages as an offset. Thus, the judge correctly entered judgment in plaintiff's favor and properly evaluated defendant's counterclaim for unreimbursed expenses she incurred during the tenancy. We discern no reason to disturb the judge's decision based on his factual findings and legal conclusions following the bench trial.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1989-16T4